UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO: 3:22-cv-03951-TKW-EMT

ASHLEY BODIN, and all others similarly
situated under 29 U.S.C. § 216(b),

       Plaintiff(s),
       v.

TCR LOGISTICS CORPORATION, and
JEAN DIEDERICKS

       Defendants.
_____/

## PLAINTIFFS MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Plaintiff, ASHLEY BODIN ("Bodin"), individually and on behalf of all other similarly situated individuals, respectfully moves, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 216(b), for entry of an order: (i) conditionally certifying the proposed FLSA collective action; (ii) ordering TCR LOGISTICS CORPORATION ("TCR Logistics") and JEAN DIEDERICKS ("Diedericks") (TCR Logistics and Diedericks collectively "Defendants") to produce a computer readable data file containing the names, last known mailing addresses and work locations for all Collective Action Members; (iii) authorizing the issuance of notice to all Collective Action Members by U.S. Mail, email, text

message, and a reminder notice during the opt-in period. Such relief is appropriate for the reasons set forth herein.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, TCR LOGISTICS, owns and operates a logistics company that works in conjunction with FedEx to deliver packages to FedEx's residential and commercial customers in Northern Florida. Plaintiff worked with dozens of similarly situated Delivery Drivers who performed identical duties as Plaintiff. Plaintiff filed this collective action lawsuit seeking to recover unpaid overtime wages from Defendants based on violations of the FLSA, 29 U.S.C. § 201, *et seq.*, for their failure to pay proper overtime wages to herself and to all other Delivery Drivers. Plaintiff alleges that Delivery Drivers are paid a day rate and are required to work in excess of 40 hours per week during their initial training period. Plaintiff also alleges that Delivery Drivers are misclassified as exempt employees during weeks when they drive vehicles weighing less than 10,000 pounds. On June 6, 2022, Opt-In Plaintiff TRAVON HORTON ("Opt-In Plaintiff" or "Horton") filed his Consent to sue under the FLSA. Plaintiff and Opt-In Plaintiff (Opt-In Plaintiff and Plaintiff collectively "Plaintiffs") now move this Court to conditionally certify the two classes of similarly situated Delivery Drivers, as set forth below:

> **1. Any and all Delivery Drivers who worked for Defendants during the previous 3-years who were not paid overtime wages during their training periods.**

2. **Any and all Delivery Drivers who worked for Defendants during the previous 3-years and were required in one or more workweeks to operate vehicles weighing less than 10,000 pounds without receiving overtime wages for work in excess of 40-hours per week.**

Plaintiffs surpass the lenient burden for conditional certification with evidence demonstrating that all Delivery Drivers are similarly situated because they are all uniformly misclassified as exempt employees during certain workweeks. Plaintiffs also provide evidence that Delivery Drivers have already joined this action **and** that other Delivery Drivers would join this case if given notice. Plaintiffs' evidence includes highly detailed declarations which attest to Defendants' misclassification of employees, the hours worked by Delivery Drivers, the vehicles driven by Delivery Drivers and their typical duties and training.

This evidence fully supports an Order conditionally certifying this case and approving notice to all of Defendants' Delivery Drivers who were employed and performed work in Florida during the previous three (3) years (the "Collective Action Members" or "FLSA Class"). Such an order would be consistent with 11th Circuit precedent and decisions from other Federal Judges across the country which allow notice in FLSA misclassification cases. *See* Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1262 (11th Cir. 2008) (affirming collective action trial verdict on behalf of misclassified employees); Cummings v. Knowles on Site Repair, Inc.,

N.D. Fla. Case No. 3:20-cv-05412-MCR-MJF, 2021 WL 8533031 (N.D. Fla. Jan. 28, 2021) (Rodgers, J) (conditionally certifying class when employees asserted they were misclassified as exempt); Wallace v. Southern Cable Systems, LLC, N.D. Fla. Case No. 3:16-cv-00209-RV-HTC, 2017 WL 6994565, at *1 (N.D. Fla. May 8, 2017) (Vinson, J.) (conditionally certifying class of misclassified employees who did not receive overtime pay); Figueiras et. al. v. Devereux Foundation, Inc., N.D. Fla. Case No. 1:09-cv-00227-MP-GRJ, D.E. 85 (N.D. Fla. Sept. 20, 2010) (conditionally certifying class of misclassified managers who were deprived of overtime wages); Moxley v. OS Restaurant Services, LLC, 2022 WL 1487589, at *2 (M.D. Fla. May 11, 2022) (conditionally certifying FLSA Collective Action when the Plaintiff alleged employees were misclassified as exempt); Campo v. Granite Services International, Inc., 2022 WL 212205, at *6-7 (N.D. Ga. Jan 24, 2022) (conditionally certifying FLSA Collective Action when misclassification policy constituted factual nexus which unified Plaintiffs and potential class members); Aiuto v. Publix Super Markets, Inc., 2020 WL 2039946, at *6 (N.D. Ga. April 9, 2020) (same); Weisgarber et al., v. North American Dental Group, LLC, et al.,; Webb v. RMS Properties, Inc., 2019 WL 11027705, at *3 (S.D. Fla. Feb. 20, 2019) (same); Goers v. L.A. Entertainment Group, Inc., 2016 WL 8669874, at *3 (M.D. Fla. July 8, 2016) (same); Pena v. Handy Wash, Inc., 28 F.Supp.3d 1289, 1300-01 (S.D. Fla. 2014) (Altonaga, J) (same); Lyttle v. Lowes Home Centers, Inc. et. al.,

2014 WL 103463 at *5 (M.D. Fla. Jan. 10, 2014) (same);  Whitaker v. Kabellink Communications, LLC, 2013 WL 5919351, at *3 (M.D. Fla. Nov. 4, 2013) (Moody, J) (same);  Vondriska v. Premier Mortg. Funding, Inc., 564 F.Supp.2d 1330, 1336 (M.D. Fla. 2007) (same).  Through this Motion, Plaintiffs seek to protect the rights of dozens of Delivery Drivers by sending them Court-approved notice of this action and allowing them to decide whether to join.

## II.    MISCLASSIFICATION UNDER THE FLSA

The FLSA requires employers to pay overtime wages to non-exempt employees for all "hours worked" over forty (40) per week. *See* 29 U.S.C §207(a)(1). However, various classes of employees are exempt from overtime requirements under the FLSA, including employees who are subject to the power and authority of Secretary of Transportation. *See* 29 U.S.C. § 213(b)(1).[1]  Nevertheless, the small vehicle exception to the MCA exemption requires employers to pay overtime wages to employees who drive motor vehicles weighing less than 10,000 pounds. McClain v. Ultimate Towing of Gainseville, 2017 WL 4932933, at *1 (N.D. Fla. Sept. 15, 2017) (Walker, J.); *see also* Bedoya v. Aventura Limousine & Tansp. Service, Inc., 2012 WL 3962935, at *2 (S.D. Fla. Sept. 11, 2012) (Altonaga, J).  The employer bears the burden of demonstrating that its employee is exempt. Bedoya, 2012 WL 3962935, at *2;  White v. U.S. Corrections, LLC, 996 F.3d 302, 308-09 (5th Cir.

---

[1] This exemption is commonly referred to as the Motor Carrier Act ("MCA") exemption.

2021) (holding that the determination of whether an employee's job as a transportation worker fell under the MCA exemption requirements is primarily a question of fact best suited for summary judgment.). Further, the Department of Labor has long held that an employee is *not* exempt from the FLSA overtime requirements during training periods. *See 29 C.F.R. § 541.705*; <u>Jibowu v. Target Corp.</u>, 492 F.Supp.3d 87, 109 (E.D.N.Y. 2020) (denying motion for summary judgment and granting motion for conditional certification when employees alleged they were misclassified as exempt during training periods); <u>Metzler v. Medical Management International, Inc.</u>, 2020 WL 1674310, at *5 (M.D. Fla. March 4, 2020) (Conditionally certifying class of employees who claimed they were misclassified as exempt during training periods); <u>Roman v. Burger King Corp.</u>, 2015 WL 12881153, at *1 (S.D. Fla. June 2, 2015) (same).

This Collective Action challenges the validity of Defendants' classification of their Delivery Drivers. More specifically, Defendants implemented a corporately-derived policy of paying Delivery Drivers a flat day rate for each day of work. Defendants also refused to pay Delivery Drivers overtime wages for their work performed in excess of forty (40) hours per week, including during workweeks when Delivery Drivers were in training and/or drove vehicles weighing less than 10,000 pounds. Plaintiffs contend that they:

(1) Fall within the small vehicle exception to the MCA exemption during one or more workweeks when they worked more than forty (40) hours and were not paid overtime wages; and

(2)  Are owed overtime wages for their training periods because they did not operate motor vehicles which were subject to the authority of the Secretary of Transportation and they worked more than forty (40) hours per week.

Defendants' uniform policy of misclassifying all Delivery Drivers as exempt employees, including during weeks when they are merely training or driving vehicles less than 10,000 pounds, caused overtime wage violations for dozens of employees. Plaintiffs and the putative class members all seek relief from the same FLSA violations – i.e., they were not exempt from overtime wage requirements but were nevertheless classified as such, resulting in overtime wage violations. Accordingly, because Defendants unvaryingly applied their pay policies to every Delivery Driver, Conditional Certification is appropriate.

## III.    FACTS

### A. Delivery Drivers throughout Florida are Similarly Situated

#### 1.  Defendants Do Not Pay Overtime Wages During Training Periods

Defendants implemented a common, widespread and corporately-derived policy of misclassifying Delivery Drivers as exempt during their training periods

7

and failing to pay them overtime wages, despite requiring them to work more than forty (40) hours per week. *See* Bodin Decl., (hereafter **Exhibit A**) at ¶¶ 9-11, 25-26; Horton Decl., (hereafter **Exhibit B**) at ¶¶ 9, 13-15. Plaintiffs did not operate motor vehicles subject to the authority of the Secretary of Transportation during their training periods. Exhibit A, at ¶ 24. Plaintiffs' primary duty during their training period was to observe other Delivery Drivers. Exhibit A, at ¶ 9; Exhibit B, at ¶ 6. Pursuant to company policy, all Delivery Drivers had to work more than forty (40) hours per week during training periods. Exhibit A, at ¶ 11; Exhibit B, at ¶ 9. Nevertheless, Defendants failed or pay Plaintiffs and all other Delivery Drivers overtime wages during their training periods.  Exhibit A, at ¶¶ 25-27; Exhibit B, at ¶¶ 13-15.

### 2. Defendants do Not Pay Overtime Wages During Weeks when Delivery Drivers Operate Vehicles Weighing Under 10,000 Pounds

Plaintiffs and all other Delivery Drivers were required to drive vehicles which weighed less than 10,000 pounds during certain weeks within their employment periods. Exhibit A, at ¶¶ 16-25; Exhibit B, at ¶¶ 11-14. Defendants have a plethora of vehicles in their fleet that weigh under 10,000 pounds. *Id.* In addition, Defendants often rent U-Haul trucks which weigh less than 10,000 pounds. Exhibit A, at ¶¶ 19-22; Exhibit B, at ¶ 12. Defendants' corporate policy consistently misclassifies Delivery Drivers as exempt when they require Delivery Drivers to work more than forty (40) hours in a workweek and operate vehicles weighing less than 10,000

8

pounds. *Id.* Plaintiffs and all other Delivery Drivers were paid a day rate during each week of their employment and were not paid overtime wages, including when they worked more than forty (40) hours per week and operated vehicles that weighed less than 10,000 pounds *See* Exhibit A, at ¶¶ 4, 25-26; Exhibit B. at ¶¶ 14-15.

### 3. Delivery Drivers Hold Identical Duties and are Subject to Defendants' Unlawful Corporate Policy which Classifies them as Exempt

Plaintiffs held identical duties during their employment periods with Defendants. Exhibit A, at ¶¶ 8-9, 22, 25; Exhibit B. at ¶¶ 5-6. All Delivery Drivers operated motor vehicles on behalf of Defendants to deliver FedEx packages to Defendants' and FedEx's customers in Northern Florida, except during their training periods. *Id.* Plaintiffs were paid a day rate during their entire employment periods. Exhibit A, at ¶¶ 4, 25-26; Exhibit B. at ¶¶ 14-15. Plaintiffs and the putative class of Delivery Drivers all had to undergo training which consisted of at least one (1) workweek which exceeded forty (40) hours of work and which consisted primarily of observation of other Delivery Drivers. Exhibit A, at ¶ 9, 24; Exhibit B, at ¶ 6. Moreover, Plaintiffs and the putative class of Delivery Drivers were required to drive vehicles under 10,000 pounds during one (1) or more workweeks. Exhibit A, at ¶¶ 16-25; Exhibit B, at ¶¶ 11-14. Defendants failed to pay overtime wages to all Delivery Drivers, regardless of whether they were training or operating small vehicles weighing under 10,000 pounds. *Id.* Because Plaintiffs and all other Delivery

Drivers are unified by a common misclassification policy which resulted in overtime wage violations, the Court should grant this Motion for Conditional Certification. *Id., see also* <u>Morgan v. Family Dollar Stores</u>, 551 F.3d 1233, 1260-64 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision in a single collective action, especially where there is robust evidence that store managers perform uniform, cookie-cutter tasks mandated by a one-size-fits-all corporate manual.").

## IV.    LEGAL FRAMEWORK FOR FLSA COLLECTIVE ACTIONS

### A.    Collective Actions Under the FLSA

The FLSA permits an employee to bring a collective action on behalf of himself or herself, and for "other employees similarly situated." *See 29 U.S.C. 216(b);* <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1216 (11th Cir. 2001). In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members. *See* <u>Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 171 (1989). To be bound by the case's outcome, an employee must opt into a collective action by filing a written consent to join the action. <u>Albritton v. Cagles, Inc.</u>, 508 F. 3d 1012 (11th Cir. 2007).

The authority to compel employers to provide notice in an FLSA Collective Action includes sending court-authorized notice to potential opt-in Plaintiffs regarding the lawsuit and their statutory right to join. <u>Hoffman-La Roche Inc.</u>, 493

U.S. at 170-71. In establishing these procedures, the Supreme Court recognized the benefits of a collective action, which permit:

> Plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id.* at 170.

## B. The Two-Tiered Approach to Conditional Certification

The FLSA speaks in broad strokes, and does not specify the details of how collective actions are to proceed, and thus, the District Courts may use their discretion on how to handle them. *See* Hoffman-La Roche Inc., 493 U.S. at 170-71. To grant conditional certification of a collective action, most courts require a finding that there are other employees who: (1) are **similarly situated** with regard to their job requirements and pay provisions; and (2) **desire to opt-in** to the case. *See* Dybach v. Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (emphasis added); Hannah v. Huntington National Bank, 2020 WL 2571898 at *5 (N.D. Ill. May 21, 2020) (explaining that "most courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action") (citing 7B Charles Alan Wright & Miller, *Federal Practice and Procedure § 1807*, (3d ed. 2020)).

The first step of conditional certification under the FLSA is lenient, and typically involves conditionally certifying a class. Hipp., 252 F.3d at 218 (11th Circuit holding that because the court has minimal evidence at the first step of conditional certification, the determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class); Wallace v. Southern Cable Systems, LLC, N.D. Fla. Case No. 3:16-cv-00209-RV-HTC, 2017 WL 6994565, at *1 (N.D. Fla. May 8, 2017) (Vinson, J.) ("**The first stage, known as the 'notice stage' comes before the plaintiff had the chance for discovery, and the court must decide—based on the pleadings and affidavits that were filed—if notice of the lawsuit should be given to potential class members**.") (internal citations omitted); Robinson v. Sailormen, Inc., 2016 WL 11528450, at *3 (N.D. Fla. Nov. 18, 2016) (Walker, J.) (same); Bryant v. Lakeview Center, Inc., 2010 WL 11520205, at *2 (N.D. Fla. Sept. 8. 2010 (Rodgers, J.) (same); McClean v. On the Half Shell, Inc., No. 3:17-cv-1434-J-20MCR, 2018 WL 8578016, at *2 (M.D. Fla Oct. 24, 2018) (Schlesinger, J); Pittman v. Comfort Sys. USA (Southeast) Inc., 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) (Moody, J) ("**The Eleventh Circuit has adopted a lenient, pleading-like standard to determine whether notice to potential class member is appropriate**" in collective actions). The Defendant may move to decertify the class at the second stage of conditional certification, which typically occurs *after* the close of discovery. Mickles v. Country Club, Inc., 887 F.3d

1270, 1276 (11th Cir. 2018). The Court has more information at the second stage and makes a factual determination of the similarly-situated requirement. <u>Mickles</u>, 887 F.3d at 1276.[2]

### C. The Type of Evidence Required to Show Employees are Similarly Situated Under the Lenient Conditional Certification Standard

In determining whether employees are similarly situated, the Court should consider whether the employees are similar with respect to their job requirements and pay provisions. *See* <u>Dybach</u>, 942 F.2d at 1567-68. Plaintiffs need show only 'that their positions are similar, not identical," to the position held by the putative class members. <u>McClean</u>, 2018 WL 8578016, at \*2. The similarly situated requirement of the FLSA within 29 U.S.C. § 216(b) is more elastic and less stringent than the requirements of Rule 23 (as to class actions) Rule 30 (as to joinder) and Rule 42 (as to severance). *See Id.* (*citing* <u>Grayson v. K-Mart Corp.</u>, 79 F.3d 1086, 1095 (11th Cir. 1996)). The Plaintiff must show only a "**reasonable basis**" for his claim that there are other similarly situated employees. <u>Morgan v. Family Dollar Stores</u>, 551 F.3d 1233, 1260-61 (11th Cir. 2008) (emphasis added).

Moreover, while some courts require a Plaintiff to produce "substantial allegations that the putative class members were together victims of a single decision, policy, or plan," <u>Thiessen v. Gen. Electric Capital Corp.</u>, 267 F.3d 1095,

---

[2] Factors to evaluate at the ***second*** stage include: (1) disparate factual and employment settings; (2) various defenses of Defendant that appear to be individual to each Plaintiff; (3) fairness and procedural consideration. <u>Wallace</u>, 2017 WL 6994565, at \*n1.

1102 (10th Cir. 2001), the 11th Circuit has held that the "a unified policy, plan, or scheme of discrimination **may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)**." <u>Grayson v. K-Mark Corp.</u>, 79 F.3d 1086, 1096 (11th Cir. 1996) (emphasis added); *see also* <u>Robinson</u>, 2016 WL 11528450, at \*5 (Walker, J.).

The fact that there may be variations in job titles and duties among the proposed class does not prevent conditional certification; rather, these issues go to the merits of whether the employees are exempt, which is adjudicated after the completion of discovery. *See* <u>Robinson</u>, 2016 WL 11528450, at \*5 (Judge Walker explaining that "variations in specific duties, job locations, working hours, or the availability of various defenses" are not considered at the conditional certification stage); <u>Wallace</u>, 2017 WL 6994565, at \*3 (Judge Vinson holding that Defendants' argument that conditional certification should be denied because the employees were paid different amounts and had different duties was "unpersuasive"); <u>Allen v. Hartford Fire Ins. Co.</u>, 2017 WL 3701139, at \*24, n.11 (M.D. Fla. Aug. 25, 2017) (explaining that the focus at the first stage of conditional certification is not whether there has been an actual violation of law, but whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated) (citations omitted). Thus, in evaluating a motion for conditional certification, the Court does not consider whether plaintiffs are properly classified. <u>Robinson</u>, 2016

WL 11528450, at *5 ("[C]ourts regularly decline to reach the issue of whether the allegedly unlawful employment policy was the exception or the rule at the conditional certification stage."); Russel v. Life Win. Inc., 2014 WL 7877787, at *3 (M.D. Fla. April 23, 2012); Metzler, 2020 WL 1674310, at *5 (refusing to address Defendants' merit based arguments regarding exemption when adjudicating conditional certification motion). Similarly, any individualized analysis is improper at the conditional certification stage. *Id.*; Ciani v. Talk of the Town Restaurants, Inc., 2015 WL 226013, at *3 (M.D. Fla. Jan. 16, 2015); Lytle, 2014 WL 103463, at *4-5; Metzler, 2020 WL 1674310, at *5; Simpkins v. Pulte Home Corp., 2008 WL 3927275, at *3-4 (refusing to evaluate the "mass of evidence" presented by defendant in opposition to conditional certification, including evidence about varying types of work and hours).

## V.  ARGUMENT: PLAINTIFF SURPASSES THE LENIENT BURDEN FOR CONDITIONAL CERTIFICATION

### A. Plaintiff and Opt-In Plaintiff are Similarly Situated

This case challenges a straightforward, uniform, and corporate policy – Defendants' misclassification of Delivery Drivers as exempt employees during their training periods and during weeks when they operate vehicles weighing less than 10,000 pounds. This misclassification leads to overtime wage violations when Delivery Drivers work over forty (40) hours during their training periods and during weeks when they drive vehicles under 10,000 pounds. *See* Exhibits A-B. Thus,

Plaintiffs and all other Delivery Drivers are unified by a common theory of overtime wage violations, caused by Defendants' misclassification of Delivery Drivers. This is precisely the type of claim that courts recognize as being appropriate for conditional certification of FLSA claims. Wallace, 2017 WL 6994565, at *3; Aiuto, 2020 WL 2039946, at *6 (N.D. Ga. April 9, 2020) (explaining that the fact that an employer collectively classifies employee as exempt shows that the employer also views the employees' jobs similarly); Cummings, 2021 WL 8533031, at *3 (N.D. Fla. Jan. 28, 2021) (conditionally certifying class and sending notice to employees at different facilities because the there was a company-wide policy that led to overtime wage violations); McColley v. Casey's General Stores, Inc., 2021 WL 1207564 at *4 (N.D. Ind. March 31, 2021) (conditional certification of FLSA claims appropriate when the Plaintiffs provided evidence of a "common policy or plan that violated the law"); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009) (conditional certification of FLSA claims appropriate when employees were "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct")[3]; Chalker v. Burlington Coat Factory of Fl, LLC, 2013 WL 594784 at *1 (M.D. Fla. Nov. 7, 2013)

---

[3] For some courts, a "blanket" policy, like Defendants' policy, without much more, can meet the low threshold for conditional certification. See Butler v. DirectSat USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (conditional certification of FLSA Claims is appropriate when Plaintiffs make a modest factual showing that a common policy, scheme, or plan that violated the law existed).

(Merryday, J) (explaining employee may prove that he is similarly situated for the purpose of conditional certification if he shows that he is the victim of a corporately derived (and not isolated) policy or plan that violated the law along with the putative class).

In Wallace, 2017 WL 6994565, the Plaintiffs sought conditional certification and alleged they were misclassified as independent contractors. The Plaintiffs argued they were deprived of overtime wages during workweeks when they worked more than forty (40) hours because of this misclassification. *Id.* The Defendants countered that Plaintiffs were not similarly situated—and that conditional certification should be denied—because the "installers and technicians were paid different amounts and had different duties based on their respective certification levels." 2017 WL 6994565, at *3. Judge Vinson rejected this argument and explained that the 11th Circuit has clarified that the similarly situated requirement does not require the positions to be identical. *Id.* Finally, the Court held that because the "phone, internet and cable installers/technicians" all alleged they were improperly classified as independent contractors pursuant to a company-wide policy, and compensated according to a schedule of different jobs, the employees were similarly situated. *Id.*

In Aiuto, 2020 WL 2039946, at *6, the Plaintiffs sought conditional certification of a class of similarly situated Meat, Deli and Bakery Managers. The

Plaintiffs argued that these managers were misclassified as exempt employees because their primary duties were non-exempt. *Id.* The Court granted the Plaintiffs' Motion for Conditional Certification and held that the fact that the employer collectively classifies its employee as exempt shows that the employer also views the employees' jobs similarly and, at a minimum, suggests that the employees suffered under a common policy. *Id.*[4]

In Oritz v. Mettters Industries, Inc., 2019 WL 338942 (M.D. Fla. Jan. 28, 2019) the Plaintiffs sought conditional certification of a class of similarly situated employees who were not paid for their final weeks of employment. The Court held that the Plaintiffs met their burden of establishing that they were similarly situated because the entire putative class was subject to Defendants' improper policy of denying them pay during their final weeks of employment. *Id.* at *2-3.[5]

The evidence presented by Plaintiffs at this stage is more than sufficient for conditional certification. Most importantly, Plaintiffs demonstrate that all Delivery Drivers employed by Defendants are subject to the same common, widespread and uniform misclassification. *See supra* Part III(A). Plaintiffs allege, and will ultimately prove at trial, that this policy leads to FLSA overtime violations during training

---

[4] In Roman, 2015 WL 12881153 and Metzler, 2020 WL 1674310, the Plaintiffs sought conditional certification and claimed they were misclassified as exempt during training periods. The Southern and Middle District of Florida judges both granted the Plaintiffs' Motions for Conditional Certification. *See Id.*

[5] Of note, there were only two (2) opt-in Plaintiffs in Oritz. 2019 WL 338942, at *1.

periods and during weeks when they operated vehicles under 10,000 pounds. *See* Exhibit A at ¶¶ 16-26; Exhibit B at ¶¶ 14-15. In addition, Plaintiffs have provided evidence that all Delivery Drivers have similar job duties, are paid a day rate and work more than forty (40) hours per week. *Id.* Because it is not proper for the Court to make credibility determinations, conduct individualized inquiries or make a merits determination at the conditional certification phase, this evidence alone is enough for the Court to grant conditional certification. *See* Hipp, 252 F.3d 1219 (rejecting employer's contention that each potential class member was unique and required an individual analysis of their working conditions); *see also* Bryant, 2010 WL 11520205, at n1 (N.D. Fla. Sept. 8. 2010) ("At the second stage, if the defendant moves for decertification, the court will make a more informed factual determination of similarity at that time"); McClean, 2018 WL 8578016, at *4 (factual issues are not considered at the notice stage of conditional certification); Peña v. Handy Wash, Inc., 28 F. Supp. 1289,1300 (S.D. Fla. 2014) ("The Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determination" at the conditional certification stage").

**B.     The Court Should Authorize Notice Because Plaintiffs Have Sufficiently Shown Other Employees Desire to Opt-in**

With respect to the second requirement for conditionally certifying a class, an employee must show that there are other employees who would opt-in, if given notice.  *See* Mackenzie v. Kindred Hosps. E., LLC, 276 F. Supp. 2d 1211, 1220

(M.D. Fla. 2003). Within the 11th Circuit, the threshold burden for demonstrating that others desire to opt-in is not onerous. The existence of just **one** other co-worker who desires to join in is sufficient to raise the Plaintiff's contention beyond one of pure speculation. *See e.g.,* Cummings, 2021 WL 8533031, at *3 (Rodgers, J) (**approving notice in misclassification case and highlighting that one named Plaintiff plus opt-in may be sufficient**)[6]; Wickles v. Premier Plumbing and Leak, LLC, 2020 WL 12309029, at *2 (N.D. Fla. Oct. 23, 2020) (Hinkle, J) ("**Usually consent notices *or* the affidavits of employees who will opt in support a finding at the first stage. But even one or two co-worker affidavits can elevate a plaintiff's allegations beyond mere speculation**.") (internal citations omitted); Robinson, 2016 WL 11528450, at *5 (Judge Walker holding that "[e]ven one or two coworker's affidavits can push the plaintiff's allegations beyond mere speculation."); Browder v. Towercomm, LLC, 2017 WL 10701362, at *2 (N.D. Fla. July 1, 2017) (same) Robinson v. Devereux Foundation, N.D. Fla. Case No. 1:09-cv-00227-MP-AK, D.E. 85 at pg.3 (N.D. Fla. Sept. 20, 2010) (**approving notice and noting that courts have held that a named plaintiff plus one opt-in is sufficient**) Garcia v. J&J, Inc., 2019 WL 3457613 at *3 (S.D. Fla. July 31, 2019); Rojas v. Garda CL Se., Inc., 297 F.R.D. 669, 677 (S.D. Fla. 2013) ; Webb v. RMS

---

[6] In Cummings, the Plaintiff identified two co-workers interested in joining and a third that opted into the lawsuit. *Id.* The Defendants in Cummings were represented by Defense Counsel.

Properties, Inc., 2019 WL 11027705, at *3 (S.D. Fla. Feb. 20, 2019) (holding that the Plaintiff proved that others wished to opt-in when there were only two (2) opt-in Plaintiffs); Torres v. Nature Coast Home Care, LLC, 2016 WL 5870217, at *2 (M.D. Fla. Oct. 7, 2016) ("Notably … even one opt-in notice can be sufficient" to demonstrate that other employees desire to opt-in); Wynder v. Applied Card Sys., Inc., No. 09-80004, 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009) (granting conditional certification of FLSA collective action based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff); Teahl v. The Lazy Flamingo, Inc., No. 2:13-cv-833-FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015) ("Upon consideration of the lenient standard, two opt-in plaintiffs, and … declaration, there is a reasonable basis to believe that there are other employees who may desire to opt-in"); Brooks v A. Rainaldi Plumbing, Inc., No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec 8, 2006) ("Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation); Ciani, 2015 WL 226013, at *2 ("the presence of two opt-in plaintiffs, each having filed a declaration describing their working conditions and their desire to join this suit, satisfies the Court that others desire to join in the action"); Santiago v. Mid-South Painting, Inc., 2011 WL 3418252, at *4-5 (S.D. Fla. Aug 3, 2011) (Altonaga, J) (holding that a plaintiff's statement alone would normally be insufficient;

however, when coupled with evidence of a common payroll policy or scheme, the Plaintiff met his burden); <u>Maar, et. al. v. Beall's Inc.</u>, Case No. 2:16-cv-14121-DMM, D.E. 47 at 6 (S.D. Fla. Nov. 23, 2016) (Middlebrooks, J.) (interest of others to join demonstrated when declarations identified others who were subject to the same classification policy).

In <u>Santiago</u>, the Plaintiff moved for conditional certification and alleged that a common policy implemented by the Defendants led to overtime wage violations. 2011 WL 3418252, at *4-5. In support of his Motion for Conditional Certification, the Plaintiff only attached 1 affidavit – from the Plaintiff himself – and deposition transcripts which showed that Defendants did, indeed, implement a common pay policy. *Id.* The Court granted the Plaintiff's Motion for Conditional Certification, despite the existence of only one (1) affidavit and ***no*** opt-in Plaintiffs because "***a common payroll policy or scheme is sufficient to establish there are other employees desiring to opt-in***." *Id.* (*quoting* <u>Mooney v. Advanced Disposal Servs.</u>, No. 3:07-cv-1018-WKW, 2008 WL 3843550, at *2 (M.D. Ala. Aug.14, 2008)); *citing* <u>Tucker v. Labor leasing, Inc.</u>, 872 F.Supp.941, 948 (M.D. Fla. 1994); *see also* <u>Tucker</u>, 872 F. Supp. at 948 (holding that it was likely that others desired to opt-in when personnel were paid in the same manner).

In <u>Cummings</u>, the Court granted conditional certification when the Plaintiff identified two co-workers interested in joining and a third who opted into the lawsuit.

2021 WL 8533031, at *3. The Court held that a Plaintiff shows that others desire to opt-in beyond the point of speculation where "at least one co-worker desires to join the suit." *Id.* Moreover, the Court rejected Defense Counsel's argument that conditional certification was inappropriate due to an insufficient number of opt-in Plaintiffs because the declarations were detailed and not conclusory.[7]

In <u>Wickles</u>, the Plaintiff cited to affidavit testimony from non-parties in support of his Motion for Conditional Certification. 2020 WL 12309029, at *3. The affiants were other employees who filed their own lawsuits against the Defendants. *Id.* The Court noted that "there is no reason to believe those employees … will opt-in." *Id.* Nevertheless, the Court granted the Plaintiff's Motion for Conditional Certification because the Plaintiff asserted the Defendants had a policy not to pay overtime and there were 24 employees within the putative class. *Id.*

Here, Plaintiff and Opt-In Plaintiff have filed detailed affidavits and provided ample evidence for the Court to grant this Motion. *See* Exhibit A; Exhibit B. Plaintiffs' claim that they are aware of other current and former employees who wish to opt-in to this case, but who, out of fear of retaliation, are hesitant to join until Court-authorized notice is provided. Exhibit A at ¶ 30-33; Exhibit B at ¶ 16-17. Plaintiff Bodin has provided evidence that "there is no question in my [her] mind

---

[7] In this case, Plaintiffs have also furnished highly detailed affidavits. Notably, the Defendants in <u>Cummings</u> were represented by the same Defense Counsel as this case.

that current and former Delivery Drivers" would join the case if the Court provides them with notice.  Exhibit A at ¶ 31-33.  In addition, Plaintiffs have provided evidence of Defendants company-wide policy of misclassifying Delivery Drivers as exempt. Exhibit A at ¶¶ 25, 28-29; Exhibit B at  ¶¶  14-15. Defendants failed to pay these Delivery Drivers overtime wages during training periods and when they drove vehicles weighing under 10,000 pounds. *Id.* Plaintiffs have also adduced evidence that they drove vehicles weighing less than 10,000 pounds. Exhibit A, at ¶¶ 16-25; Exhibit B, at ¶¶ 11-14. Because Plaintiffs have shown that the challenged misclassification impacted all Delivery Drivers and that other drivers wish to join this case (and would join if given notice) Plaintiffs have satisfied the nominal threshold for conditional certification.

## VI.    NOTICE: SCOPE, FORM AND DISTRIBUTION

### A. **All Delivery Drivers within a Three-Year Limitations Period Should Receive Notice**

The FLSA allows employees to collect damages within a three-year limitations period if they can show, as alleged in the Amended Collective Action Complaint, that an employer's FLSA violation was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct prohibit the [FLSA]." McLaughlin v. Richard Shoe Co., 486 U.S. 128, 133 (1988); Cummings, 2021 WL 8533031, at *4 (ordering notice to be sent out for the previous three years to employees at different facilities); McClean, 2018 WL

8578016, at *4 (approving notice to be sent to employees who worked for Defendant "within three (3) years preceding the date notice is sent through the present"); Torres, 2016 WL 5870217, at *3 (overruling objection with respect to 3-year limitations period for notice). Accordingly, the notice period should begin three (3) years prior to the date notice is sent in this case. *Id.*

## B. Notice Should be Provided to All Delivery Drivers Who Are/Were Employed by Defendants in Florida

The evidence in this case establishes that the Defendants' treatment of Delivery Drivers was common, widespread and uniform throughout Northern Florida. *See* Exhibit A; Exhibit B. Employees who performed work in Florida typically worked in the Panhandle and had the same or similar job duties and were subject to the incorrect exemption under the MCA. *See id.* Accordingly, notice should be provided to all Delivery Drivers employed by Defendants throughout Florida. *See* Cummings, 2021 WL 8533031, at *4 (ordering notice to be sent out to employees at different facilities); Salone, 2022 WL 123789, at *5-6 (sending notice to out of state employees who were subject to same policy).

## C. Discovery and Notice Should be Expedited

The limitations period applicable to other putative class members continues to run until they opt-in to this case or file their own lawsuit. *29 C.F.R. § 790.21(b)(2)(ii).* As a result, the early data requested is time sensitive, both to ensure that putative class members are afforded an opportunity to timely preserve their

rights, and to facilitate efficient and swift litigation.  Accordingly, Plaintiffs request that the Court enter an Order expediting the notice and the discovery processes relating to this Motion for Conditional Certification.

In Hoffman-La Roche, Inc., the Supreme Court ruled that district courts are authorized to compel employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process. 493 U.S. 165 (1989). The Supreme Court also held that this authority includes sending court-authorized consent forms to potential Plaintiffs.  *Id.*  Court authorization of notice serves the legitimate goals of avoiding a multiplicity of duplicative suits and of setting cutoff dates to expedite disposition of the action.  *Id.* at 487.  As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice.  *See Id.* at 165; Dean v. W. Aviation, LLC, 2018 WL 1083497 at *3 (S.D. Fla. Feb. 28, 2018) (holding that expedited discovery from Defendants, consisting of the names, addresses, and e-mail addresses of all individuals within the class was "reasonable and necessary to provide appropriate notice to all potential Opt-In Plaintiffs"); Fantauzzi, 2010 WL 2220246 at *3 (M.D. Fla. June 2, 2010).

Here, Plaintiffs seek expedited discovery production from the Defendants, within ten (10) calendar days of the Court's order granting this Motion, of a complete list of each and every person—including their last known home address, cellular telephone number and e-mail addresses who was ever employed as a Delivery Driver

in Florida at any time within the previous three (3) years. The FLSA class member data sought here is in line with the data that other District Courts have ordered Defendants to produce on an expedited basis following conditional certification. *See* Laos, 2012 WL 718713 at *2 (S.D. Fla. Mar. 6, 2012) (Judge Scola requiring defendants to produce to Plaintiff, within fifteen (15) days of conditional certification order, a complete list of all putative class members, including their last known home address, telephone number, e-mail addresses, and the last four digits of the social security number, taxpayer ID number, and financial account numbers, of employees); Garcia, 2019 WL 3457613 at *6 (ordering defendants to produce a list containing the names of all individuals who worked for defendants, along with each person's last known address and e-mail address, within 10 calendar days of the order approving conditional certification).

**D. Proposed Court Approved Notice to Members of the Collective**

Plaintiffs seek Court approval to furnish notice to class members of this collective action. A copy of the proposed notice is attached hereto as **Exhibit C.** Plaintiffs' proposed notice is "timely, accurate, and informative." *See* Hoffman-La Roche, Inc., 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing accurate and timely notice to employees concerning the pendency of the collective action, and thus it should be adopted. Because Delivery Drivers spend most of their days delivering packages within their routes, traditional

"posting" of the notice is insufficient to provide notice to the putative class. Accordingly, Plaintiffs request that Plaintiffs' Counsel be permitted to notify the potential 216(b) Class Members by e-mail, physical mail, telephone calls and/or by text message, as necessary, in addition to requiring the Defendants to post conspicuous notice at their Northern Florida locations.

Assuming the Court orders Defendants to produce the Class Member contact list within ten (10) calendar days, Plaintiffs request a total of 120 calendar days from the date the Court grants conditional certification for class members to submit their Consents to Join to Plaintiffs' Counsel (to allow ten (10) days for Defendants to furnish a comprehensive list of putative class information, twenty five (25) days for Plaintiffs' Counsel to prepare the notices to be sent, and an additional sixty (90) days for class members to submit their Consents to Join). Robinson, 2016 WL 11528450, at *8 (Walker, J.) ("In fact, this Court has previously granted a ninety-day opt-in period."); Pittman, 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) (court ordered 90-day notice period); Alequin v. Darden Restaurants, Inc., 2013 WL 3939373, at *8 (S.D. Fla. July 12, 2013) (Rosenbaum, J) ("Common practice provides an opt-in period of ninety days …"). Denying notice to these individuals is tantamount to rewarding Defendants for their failure to properly compensate Delivery Drivers; each day that passes without these individuals filing their notice of consent is a

windfall to Defendants because one more day of uncompensated hours is legally forfeited under the statute of limitations.

### i. E-mailing of Notice Should be Approved

E-mail is an efficient, effective, and non-intrusive means of providing legal notice of one's rights. Courts throughout Florida routinely determine that notice of a pending FLSA collective action is properly sent by e-mail (in addition to regular mail). *See* <u>Robinson</u>, 2016 WL 11528450, at *9 (Judge Walker permitting email notice because it is "efficient and inexpensive."); <u>McClean</u>, 2018 WL 8578016, at *4 (same); <u>Martinez v. DHL Express (USA) Inc.</u>, 2016 WL 455394 at *9 (S.D. Fla. Feb. 5, 2016) (same); <u>Cooper v. E. Coast Assemblers, Inc.</u>, 2013 WL 308880 at *4 (S.D. Fla. Jan. 25, 2013); <u>Stuven v. Texas de Brazil (Tampa) Corp.</u>, 2013 WL 610651 at *6 (M.D. Fla. Feb. 19, 2013) *citing* <u>Simmons v. Enterprise Holdings, Inc.</u>, 2011 WL 1304732 at *1 (E.D. Mo. Apr. 6, 2011) (refusing to impose a presumption that notice by mail is the preferred method of providing notice, and concluding instead "that the better course is to determine what constitutes fair and proper notice based on the facts of each case"); <u>Williams v. Coventry Health Care of Florida, Inc.</u>, 2016 WL 7013530, at *2 (M.D. Fla. Oct 4, 2016) ("courts in this district and others have found email to be an appropriate and efficient addition to first class mail in the delivery of notice to a class.").

### ii.  **Physical Mailing of Notice is Proper**

In addition to e-mail notice, physical mailing of notice is an effective and efficient means of providing notice of a pending FLSA collective action, even when other means of notice are provided.  *See e.g.,* De Leon v. Southern Transp. Grp., Inc., 2017 WL 2899977 at *1 (S.D. Fla. Jan. 23, 2017); *see also* Laos, 2012 WL 718713 at *6.  Accordingly, should the e-mail notifications "bounce back" or otherwise be "undeliverable," Plaintiffs seek approval to provide notice to the physical mailing addresses for all current and/or former employees.  More specifically, Plaintiffs seek leave to provide the proposed notice to each potential class member via first class mail with a pre-addressed and stamped return envelope. *See e.g.,* Martinez, 2016 WL 455394 at *9 (permitting notice to be sent via first class mail and a pre-addressed and stamped return envelope).

### iii. **Text Messaging of Notice is Proper Under the Circumstances**

Should notice via e-mail and physical mailing fail, Plaintiffs seek Court approval to provide notice via text message. The most practical and effective way to communicate with a plethora of people is through text messaging.  Many courts have allowed text message notice in FLSA cases because of the remedial purpose of the FLSA and the goal of effective facilitation of notice. *See* Thrower v. Universalpegasus, Int'l Inc., 2020 WL 5258521at *11-12 (S.D. Texas, Sept. 3, 2020) (Text message notice approved in FLSA case because it would increase the

likelihood that employees receive notice); <u>Vasto v. Credico United States LLC</u>, 2016 WL 2658172 (S.D.N.Y. 2016) (same); <u>Eley v. Stadium Group, LLC</u>, 2015 WL 5611331 at *3 (D.D.C. 2015) (same); <u>Irvine v. Destination Wild Dunes Mgmt.</u>, 132 F.Supp.3d 707, 711  (D.S.C. 2015) (same); <u>Bhumithanarn</u>, 2015 WL 4240985, at *5 (S.D.N.Y. 2015) (same). Additionally, "given the amount of junk mail that people receive, email **and** text message likely are more effective methods for communicating with potential class members than traditional first-class mail. <u>Landry v. Swire Oilfield Servs., LLC</u>, 252 F. Supp. 3d 1079, 1129-30 (D.N.M 2017).

### iv. <u>Plaintiff's Counsel Should Be Permitted to Post Notice on its Website</u>

The Court has discretion to permit notice in any manner which would facilitate swift and economic justice. <u>Qiang</u>, 447 F.Supp.3d at 93; *see also* <u>Brown v. Discrete Wireless, Inc.</u>, 2014 WL 6607006, at *3 (M.D. Fla. Nov. 19, 2014). Putative Plaintiffs will ostensibly visit the undersigned law firm's website when they receive mail and email notice.  Therefore, Plaintiffs' Counsel would like to provide conspicuous notice on its website to "facilitate swift and economic justice." *See* <u>Qiang</u>, at 97 (permitting notice via mail, email, text, or social media platforms and permitting Plaintiff's counsel to post notice on its website).

### v. <u>Reminder Notices are Proper and Should Be Permitted</u>

Plaintiffs also request permission to send a reminder notice to members of the putative class.  In particular, Plaintiffs request permission to transmit a reminder

notice to the putative class at the half-way point in the notice period. Plaintiffs' request is consistent with decisions from this Court and others across the United States which permit reminder notices to ensure putative class members are aware of their rights and the time within which to exercise the same. *See* McClean, 2018 WL 8578016, at \*4 (permitting reminder notice at the half-way point in the Notice Period); Martinez, 2016 WL 455394 at \*9 (S.D. Fla. 2016) (allowing Plaintiffs to send a reminder postcard thirty (30) days after the notice was approved); Camano v. 7 Call Center Inc., 2016 WL 4704934 (S.D. Fla. Feb. 5, 2016) (holding that Plaintiff's follow-up reminder was appropriate to ensure putative class members become aware of their rights within the relevant time period); Brown, 2014 WL 6607006, at \*3 ("Within 55 days of entry of the Order of this Stipulation, Plaintiffs shall issue a 'reminder' Notice that is identical in all respects to the initial Notice…).

## V.    **CONCLUSION**

Defendant Jean Diedericks completely flouted Plaintiff when she requested information about Defendants' overtime wage policies during her employment period. *See* Exhibit A, at ¶ 28-29. Defendants' misclassification of Delivery Drivers has deprived at least fifty (50) hard working current and former employees of overtime wages. These employees sacrificed time away from their families in order to work for Defendants and earn a living. Because Plaintiffs have satisfied the lenient burden for Conditional Certification, the Court should most respectfully grant this

Motion and allow notice to be sent to the putative class of Delivery Drivers about their right to join this Action.

**WHEREFORE**, Plaintiff, ASHLEY BODIN, and opt-in Plaintiff, TRAVON HORTON, respectfully request that the Court enter an order:

(1) granting conditional certification of the above styled Case as a collective action under the Fair Labor Standards Act for the following two (2) classes:

    **1. Any and all Delivery Drivers who worked for Defendants during the previous 3-years who were not paid overtime wages during their training period.**

    **2. Any and all Delivery Drivers who worked for Defendants during the previous 3-years and were required to operate vehicles weighing less than 10,000 pounds without receiving overtime wages for work in excess of 40-hours in a workweek.**

(2) appointing Plaintiff, Ashley Bodin, as the Representative of the Class with authority to negotiate and appear at mediations on behalf of the class;

(3) appointing the law firm of USA Employment Lawyers – Jordan Richards PLLC, and Jordan Richards, Esq., as lead counsel for the class;

(4) expediting discovery production from the Defendants, within 10 calendar days of the Court's Order granting this Motion, of a complete list, electronically in an Excel spreadsheet, of each and every Delivery Driver listed alphabetically from "A" to "Z" – including their last known home

address, cellular telephone number, e-mail addresses and job location, a separate field corresponding with each name – who was ever employed as a Delivery Driver by Defendants at any time within three (3) years of the date notice is sent;

(5) permitting Plaintiffs' counsel to send a Court-Approved Notice to all such persons about their rights to opt-in to this collective action by filing a Consent to Join Lawsuit (in the forms attached hereto and incorporated herein as **Exhibit "C"**);

(6) granting the putative class 120 days to submit the Consents to Join forms;

(7) awarding such other and further relief as the court deems just and proper.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS- JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: */s/ Jake Blumstein*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
jordan@jordanrichardspllc.com
jake@jordanrichardspllc.com
catherine@USAEmploymentLawyers.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 28th day of July 2022 and served on the counsel listed below.

By: */s/ Jake Blumstein*
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746

## LOCAL RULE 7.1 CERTIFICATES

Pursuant to N.D. Fla. Local Rule 7.1(C), I hereby certify that the parties conferred prior to the filing of this motion. Defendants do not agree to the relief sought herein. Pursuant to N.D. Fla. Local Rule 7.1(F), this document consists of approximately 7,975 words.

By: */s/ Jake Blumstein*
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746

## SERVICE LIST

MICHAEL B. KELLY, ESQUIRE
Florida Bar No. 115345
Michael.kelly@csklegal.com
Zaray.avino@csklegal.com
JACOB W. LANDRETH, ESQUIRE
Florida Bar No. 1032262
Jacob.landreth@csklegal.com
**COLE, SCOTT & KISSANE, P.A.**
890 S. Palafox St. Suite 200
Pensacola, FL 32502
Ph: (850) 483-5930
*Counsel for Defendants*