**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**CASE NO: 3:22-cv-03951-TKW-EMT**

ASHLEY BODIN, and all others
similarly situated under
29 U.S.C. 216(b),

    Plaintiffs,

    v.

TCR LOGISTICS CORPORATION,
and JEAN DIEDERICKS,

    Defendants.
_____/

## JOINT MOTION FOR COURT APPROVAL OF COLLECTIVE SETTLEMENT AGREEMENT AND REQUEST FOR ORDER OF DISMISSAL WITH PREJUDICE

Representative Plaintiff, ASHLEY BODIN ("Representative Plaintiff" or "Bodin"), and the Opt-In Plaintiffs (hereinafter "the Settlement Collective"), and Defendants, TCR LOGISTICS CORPORATION and JEAN DIEDERICKS (collectively "Defendants") (Plaintiff, the Settlement Collective, and Defendants collectively "the Parties") by and through undersigned counsel, hereby file this Joint Motion for Court Approval of Collective Settlement Agreement and Request for Order of Dismissal with Prejudice, as follows:

## I. FACTUAL BACKGROUND

Defendants own and operate a logistics company that works in conjunction with FedEx to deliver packages to FedEx's residential and commercial customers. *See* D.E. 3. Representative Plaintiff, Bodin, is a former Delivery Driver who was employed by Defendants from April 23, 2020, through February 28, 2022. *See* D.E. 3. On March 30, 2022, Bodin filed her Amended Collective Action Complaint for Damages and Demand for Jury Trial against Defendants. *See* D.E. 3. The Amended Collective Action Complaint alleges that Defendants violated the federal overtime provisions of the Fair Labor Standards Act ("FLSA") because Defendants unlawfully failed to compensate Delivery Drivers overtime wages: (a) when they worked more than 40 hours during training periods; and (b) when they worked more than 40 hours in a workweek and operated a vehicle weighing less than 10,000 pounds. *Id.* Bodin alleges that several Delivery Drivers within the past 3 years were harmed by these practices and policies. *Id.* As a result of these alleged widespread policies and practices, Bodin alleges the existence of 2 separate collectives: (1) Training Collective; and (2) Small Vehicle Collective. On July 15, 2022, Defendants filed their Motion to Dismiss Plaintiff's Amended Collective Action Complaint for Failure to State a Claim. *See* D.E. 18. Plaintiff filed her Response in Opposition to D.E. 18 on July 28, 2022. *See* D.E. 23. That same day, Plaintiff filed her Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. §

216(b). *See* D.E. 22. On August 2, 2022, the Court denied Defendants' Motion to Dismiss. *See* D.E. 27.

Following the Court's denial of the Motion to Dismiss, the Defendants agreed to conditional certification. On August 12, 2022, the Court entered its Order conditionally certifying the FLSA collectives and authorizing dissemination of Court-approved notice. *See* D.E. 30. Defendants thereafter filed their Answer and Affirmative Defenses to the Amended Collective Action Complaint for Damages and Demand for Jury Trial on August 15, 2022, in which they vehemently deny that any FLSA violations were committed. *See* D.E. 31. Defendants also assert, among other things, that some Plaintiffs never drove vehicles which weighed under 10,000 pounds and that other Plaintiffs' operation of vehicles that weighed less than 10,000 pounds was de minimus and therefore, Plaintiffs were exempt under the Motor Carrier Act ("MCA") exemption during their employment periods and that any alleged violations of the FLSA were not willful and/or intentional. *See id.*

During the opt-in period, a total of 17 individuals (including Bodin) filed consents to sue under the FLSA and joined this case. *See* D.E 9-1; D.E. 21-1; D.E. 29-1; D.E. 32-1; D.E. 32-2; D.E. 32-3; D.E. 33-1; D.E. 34-1; D.E. 34-2; D.E. 35-1; D.E. 36-1; D.E. 37-1; D.E. 38-1; D.E. 39-1; D.E. 40-1; D.E. 41-1; D.E. 42-1. However, 2 of these individuals later withdrew their consents. *See* D.E. 46; D.E. 47. Once the 90-day opt-in period closed the Parties engaged in months of significant

written discovery and even requested to extend the discovery period that was originally set by the Court. *See* D.E. 45. Indeed, Defendant propounded a total of 306 interrogatories and 765 requests for production, all of which were responded to by Plaintiffs. Plaintiffs also propounded Requests for Admissions, Interrogatories and dozens of Requests for Production. On March 30, 2023, the Parties attended mediation with nationally respected wage and hour mediator Dennis Clifford. While the matter did not resolve at mediation on March 30, 2023, the Parties were able to better evaluate their claims and defenses.

As several depositions of key witnesses quickly approached, the Parties agreed to further analyze their claims and ultimately negotiated a full and final resolution of this dispute. Given the bona fide factual and legal disputes that exist, including the potentially dispositive issue of exemption under the Motor Carrier Act ("MCA"), the Parties have now commemorated their resolution into a settlement agreement ("the Agreement") through counsel and have reached an accord on all material terms. The Agreement affords collective-wide relief and was negotiated over a period of several weeks with Counsel for the Collectives keeping their clients timely informed of the negotiations. The negotiations were focused both on the representations of the Settlement Collective (comprised of 15 individuals) and the data from thousands of employment records. Under the Agreement, Plaintiffs will receive a substantial portion of the contested wages and liquidated damages

currently claimed to be owed. Each member of the Collectives has approved the portion of the Settlement they will receive. A copy of the fully executed settlement agreement is being contemporaneously provided to the Court. The settlement reached in this case provides Plaintiffs with fair and reasonable compensation for their FLSA claims. Moreover, the settlement reached in this case **does not** include overly broad releases or confidentiality provisions which may contravene the FLSA. Indeed, the Plaintiffs are only waiving FLSA wage-related claims. *See* **Exhibit A**. Bodin, meanwhile, has entered into an additional settlement agreement with Defendants in which she is waiving further employment-related claims in exchange for the additional consideration to resolve non-FLSA claims. *See* **Exhibit B**. Counsel for the Collective is also being compensated attorney's fees separate and apart from amounts paid the Collective. *See* **Exhibit C**. Given the contentious nature of this dispute, a significant amount of time was incurred by Plaintiffs' counsel in litigating this case. A full accounting of the reasonable hourly rates and hours billed has been provided to the Court for review. Notably, Plaintiffs' counsel is receiving a reduced amount of attorney's fees and costs than what was actually incurred in the successful litigation of these claims. Accordingly, the Parties respectfully request that this Honorable Court grant their Joint Motion for Court Approval of Settlement Agreement and Request for Order of Dismissal with Prejudice.

## II. SUMMARY OF THE SETTLEMENT TERMS

The Parties have submitted the fully executed Fair Labor Standards Act Settlement Agreement and Release and Bodin's Release of Employment-Related claims. Plaintiffs' counsel has also submitted declarations outlining their experience along with the full lodestars for all time-keepers in this case for review. Plaintiffs are current and former Delivery Drivers who worked for Defendants between August 12, 2019, and August 12, 2022. In exchange for a full and final release of only wage-related claims (conditioned on Court approval of the Agreement), Defendants have agreed to pay a total settlement amount of Ninety-Five Thousand Dollars ($95,000.00). *See* **Ex. A; Ex. B; Ex. C.**

The amount each member of the Collective will receive is indicated in a spreadsheet on Exhibit A attached to the Fair Labor Standards Act Settlement Agreement and Release. Bodin will receive amounts as a member of each collective, and an additional $5,000.00 in consideration for executing a waiver and *limited* release of employment-related claims, including her individual non-FLSA claims. *See* **Ex. B**. Each and every member of the Collective has agreed to accept their respective settlement amounts in exchange for releasing only wage-related claims against Defendants. *See* Composite of Notices of Acceptance from the Collectives attached to **Ex. A**.

The Parties separately negotiated attorney's fees based on the amount of time expended and the complexity of the litigation. *See* **Ex. C**. While sizeable, the fees and costs do not impact the claims and were negotiated without regard to the amounts paid to Plaintiffs. In addition, Plaintiff's counsel voluntarily reduced their attorneys' fees to assist with reaching a fair and amicable resolution. The Parties agree that the attorney's fees and costs were necessary for the prosecution of this action particularly in light of the extensive litigation that occurred on these highly fact-specific claims. Plaintiff's lead counsel, Jordan Richards, Esq. billed an hourly rate of $395.00 per hour. *See* **Ex. C**. Associate attorney Jake Blumstein billed an hourly rate of $275.00 per hour. *Id.* Associate attorney Michael Miller billed an r hourly rate of $395.00 per hour. *Id.* Law Clerks working on this case billed an hourly rate of $150.00 per hour. *Id.* Defendants do not oppose Counsel for the Collectives' recovery of fees or expenses and do not object to Plaintiff's fees and costs, nor do they dispute that they were necessary for the successful prosecution of this action.

III. **MEMORANDUM OF LAW**

Unlike many other legal claims, parties may not bargain away the FLSA's protections. *See* <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 708 (1945) ("[T]he same policy which forbids employee waiver of the minimum statutory rate because of inequality of bargaining power prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver

7

of liquidated damages is called for"). There are only two ways in which FLSA claims can be settled or compromised by employees. *See, e.g.,* Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982). First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. *Id.* at 1353. The only other route for compromise of FLSA claims is provided in the context of lawsuits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. *Id.*

The district court may dismiss an FLSA case after scrutinizing the settlement for fairness. Lynn's Food Stores, Inc., 679 F.2d at 1353-55; *see also* Pharr v. Highway Specialties, Inc., 2019 WL 131162853, at *1 (N.D. Fla. May 13, 2019); *see also* Perez v. PJ'S Land Clearing & Excavating, Inc., 2012 WL 1290332 at *1 (S.D. Fla. Nov. 20, 2012) (recommending approval of FLSA Settlement Agreement upon finding that the settlement was a fair and reasonable resolution of a bona fide dispute over FLSA provisions). If a settlement in an FLSA dispute reflects a reasonable compromise over issues that are actually in dispute, such as FLSA coverage, exemption or computation of back wages, the District Court is permitted to review and approve the settlement in order to promote the policy of encouraging settlement of litigation. *See* Lynn's Food Stores, Inc., 679 F.2d at 1353.

When scrutinizing the fairness of a settlement for a collective under the FLSA, final certification or decertification is not necessary in order to approve the

settlement. *See, e.g.,* Huff v. Bobcat North America, LLC, 2021 WL 268356 at *2 (M.D. Fla. 2021) *citing* Ortiz v. Metters Indus., Inc., M.D. Fla. Case No. 6:17-cv-1879-PGB-DCI; *see, also,* Campbell v. Pincher's Beach Bar Grill, Inc., 2017 WL 2700629 at *1-2 (M.D. Fla. 2017) (final certification of FLSA collective not necessary when approving settlement).

Here, the Parties respectfully submit that the resolution of federal overtime wage claims is fair and reasonable. Final certification of the collectives is not necessary at this stage. This is a highly specific and complex overtime wage case that centers around the Motor Carrier Act ("MCA") exemption. More specifically, Plaintiffs' claims primarily rest upon their ability to prove they operated motor vehicles that weighed less than 10,000 pounds during weeks when they worked over 40 hours. *See* Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act, Revised November 2009, attached hereto as **Ex. C**. However, extensive discovery has revealed that the vast majority of Defendants' fleet of vehicles weighed more than 10,000 pounds, and it would have been physically impossible for Plaintiffs to each drive vehicles which weighed under 10,000 pounds during any given workweek. Moreover, Defendants assert that their business records show that Plaintiffs rarely, if ever, worked more than 40 hours in a workweek.[1]

---

[1] Plaintiffs refute this denial.

Without admitting any liability as to the alleged wage violations, Defendants have agreed to pay members of the Collectives an amount disclosed in the Fair Labor Standards Act Settlement Agreement and Release. *See* **Ex. A.** Pursuant to the Settlement Agreement, each Plaintiff is receiving approximately 3 hours of overtime wages for each week of their employment within the three (3) year statute of limitations. However, as discussed *supra,* Defendants assert that Plaintiffs were exempt during each workweek of their employment and that some of the Plaintiffs never drove vehicles which weighed less than 10,000 pounds. Defendants also assert that some of the Plaintiffs never worked more than 40 hours in a workweek. Accordingly, this case involved contested issues of fact surrounding the classification of Delivery Drivers as exempt employees as opposed to non-exempt and concerning the amount and extent of damages, if any. A total of nine (9) depositions of key witnesses were scheduled to occur between April and May 2023 when the Parties reached an agreement.[2] If Plaintiffs had proceeded to trial, a jury could have determined that Plaintiffs were not entitled to any wages or liquidated damages. Nevertheless, in order to avoid the uncertainties inherent in litigation, the Parties negotiated a settlement through counsel that is satisfactory to all Parties. *See* Davidson v. Golden Bay Towers, Inc., 2018 WL 7636333 at *1 (S.D. Fla. Dec. 17,

---

[2] TCR Logistics Corporate Representative and Defendant Jean Diedericks were scheduled to be deposed on April 27, 2023 – one day after the Parties reached an amicable resolution.

2018) (approving FLSA settlement agreement when the Parties were represented by counsel and there were contested issues of liability). These contested issues would have been heavily litigated at summary judgment and during pre-trial briefings and a significant amount of legal fees and expenses would have been incurred by all Parties.

The undersigned counsel, who are experienced in wage and hour litigation, view the reached-upon settlement as a fair and reasonable outcome for the Parties. Moreover, the undersigned counsel exchanged more than 3,000 pages of documents throughout extensive discovery practice and believe Plaintiffs are being paid a substantial portion of the wages and liquidated damages they allege they are owed. In addition, the attorney's fees and costs payable to Plaintiff's counsel do not create any conflict with the resolution of the FLSA claims or otherwise raise any issues contemplated by the Eleventh Circuit in Lynn's Food Stores, Inc., 679 F.2d at 1353. Therefore, the Settlement Agreement represents a fair and reasonable resolution of this matter in light of the various contested issues.

### IV. **CONCLUSION**

**WHEREFORE**, for the reasons set forth herein, the Parties respectfully submit that the terms set forth with the Settlement Agreement constitute a fair and reasonable resolution of their dispute concerning FLSA wages, and request that this Honorable Court approve the Settlement Agreement, enter an Order dismissing all

claims with prejudice, and retain jurisdiction over enforcement of the Settlement Agreement for one hundred twenty (120) days.

**Dated this 9th day of June 2023.**

Respectfully submitted,

| | |
|---|---|
| **USA EMPLOYMENT LAWYERS – JORDAN RICHARDS PLLC** <br> 1800 SE 10th Ave. Suite 205 <br> Fort Lauderdale, Florida 33316 <br> (954) 871-0050 <br> *Counsel for Plaintiffs* | **CARR ALLISON** <br> 305 S. Gadsden Street <br> Tallahassee, Florida 32301 <br> Ph: (850) 222-2107 <br> *Counsel for Defendants* |
| By: */s/ Jordan Richards* <br> JORDAN RICHARDS, ESQ. <br> Florida Bar No. 1108372 <br> jordan@jordanrichardspllc.com | By: */s/ P. David Brannon* <br> P. DAVID BRANNON, ESQ. <br> Florida Bar No. 820636 <br> GEORGE REYNOLDS, ESQ. <br> Florida Bar No. 56895 <br> dbrannon@carrallison.com <br> greynolds@carrallison.com |

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was served by CM/ECF on all parties listed below on this 9th day of June 2023.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST:

**P. DAVID BRANNON, ESQ.**
Florida Bar No. 820636
**GEORGE REYNOLDS, ESQ.**
Florida Bar No. 56895
CARR ALLISON
305 S. Gadsden Street
Tallahassee, Florida 32301
Ph: (850) 222-2107
*Counsel for Defendants*